UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSSETTS

|  |  |  |
|---|---|---|
| SATISH JHA, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION NO. 14-cv-12269 |
| | ) | |
| v. | ) | |
| | ) | |
| ONE LAPTOP PER CHILD, ASSOCIATION, INC., ONE LAPTOP PER CHILD FOUNDATION, RODRIGO ARBOLEDA, and NICHOLAS NEGROPONTE | ) | |
| | ) | |
| Defendants | ) | |

**PLAINTIFF'S FIRST AMENDED COMPLAINT**

**I.      INTRODUCTION**

1.     Defendants One Laptop Per Child Association, Inc. and One Laptop Per Child Foundation[1] hired Plaintiff Satish Jha by written contract to manage their charitable education project in India.  In exchange for the promised pay, Mr. Jha performed the work that he promised to perform.

2.     OLPC promised to pay Mr. Jha for his work, requested such work of him, monitored his activities, instructed him to travel to meetings with OLPC executive level personnel, regularly communicated with him and terminated him on July 31, 2012.

3.     OLPC failed to pay all the wages that it promised to Mr. Jha under the contract.

4.     Mr. Jha thus brings suit for breach of contract, fraudulent inducement and quantum meruit.

---

[1] Defendants One Laptop Per Child Association, Inc. and One Laptop Per Child Foundation are jointly referred to herein as "OLPC".

## II. PARTIES

5. Plaintiff Satish Jha ("Plaintiff") is an individual residing in 31 Pinewood Road Wellesley, Massachusetts 02182.

6. Defendant One Lap Per Child Association ("OLPCA") is a for-profit organization organized under the laws of Delaware. OLPCA also has a principal place of business located at 848 Brickell Avenue, Suite 1130, Miami, Florida 33131. In Florida, OLPCA may be served through its registered agent, CT Corporation System, 1200 South Pine Island Road, Plantation, Florida 33324.

7. Defendant One Lap Per Child Foundation ("OLPCF") is a non-profit organization organized under the laws of Delaware. OLPCF also has a principal place of business located at 848 Brickell Avenue, Suite 1130, Miami, Florida 33131. In Florida, OLPCF may be served through its registered agent, CT Corporation System, 1200 South Pine Island Road, Plantation, Florida 33324.

8. Defendant Rodrigo Arboleda resides at 611 N. Mashta Drive, Key Biscayne, Florida 33149. Defendant Arboleda acted as the chief executive officer "(CEO") of OLPC.

9. Defendant Nicholas Negroponte has a last known place of abode at 5 Willard Street, Cambridge, Massachusetts.

10. Defendant Negroponte is the founder of OLPCA and served as an officer in both OLPCF and OLPCA. He is also Chairman Emeritus of Massachusetts Institute of Technology's Media Lab.

## III. SUBJECT MATTER JURISDICTION AND VENUE

11. This Court has original jurisdiction over this civil action pursuant to 28 U.S. Code § 1332 because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States.

12. Venue is proper in this District pursuant to 15 U.S.C. §§ 15(a) & 22 and 28 U.S.C. § 1391(b), (c) and (d), because Defendants transacted business and a substantial portion of the alleged activity affected interstate trade and commerce in this District.

13. Defendants' conduct was within the flow of, was intended to, and did, in fact, have a substantial effect on the interstate commerce of the United States, including in this District.

14. The conduct was directed at, and had the intended effect of, causing injury to a person residing in, located in, or doing business in this District.

15. The conduct was directed at, and had the intended effect of causing injury to, a person residing, located, or doing business in this District.

16. Venue is thus proper in the District of Massachusetts because a substantial portion of the events forming the basis of this suit occurred in Massachusetts.

17. The Court may exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiff's claims under the laws of the several states.

## IV.   FACTS

18. On July 15, 2008, Prof. Nicholas Negroponte invited Plaintiff to team up with OLPC for its proposed project in India.[2]

19. The services of Plaintiff were retained by OLPC via Contract No. OLPC – 2008/0801/JHA, which was executed on behalf of OLPC by Mr. Charles Kane, President, on July 29, 2008.

---

[2] Nicholas Negroponte is the founder and Chairman Emeritus of Massachusetts Institute of Technology's Media Lab, and also founded OLPCA. http://en.wikipedia.org/wiki/Nicholas_Negroponte.

20. Under the contract, Plaintiff was required to visit India and to identify and connect with high-level government/education officials in India for the promotion of OPLC's activities and products.

21. Pursuant to the contract, Plaintiff was to be paid $10,834.00 (USD) per month for his services.

22. Pursuant to the contract, Plaintiff was to be reimbursed the travel and business expenses incurred by him.

23. After the authorized signatories of the parties executed the contract, a news release was published globally by OLPC announcing Plaintiff's nomination as President and CEO, OLPC India.

24. Thereafter, with Defendants' knowledge, consent and approval, Plaintiff made repeated visits to India for the purpose of identifying and connecting with high-level government/education officials in India and to otherwise promote and gain a toehold in India for OPLC's activities and products.

25. In consultation with Negroponte and Mr. Kane, Plaintiff set up OLPC India.

26. In consultation with Rodrigo Arboleda, Negroponte, and others in positions of authority at OLPC, Plaintiff carried out the terms of his employment. For example, with Defendants' knowledge, consent and approval, Plaintiff hired staff at various locations in India to assist him, some of whom were paid directly by OLPC. Other staff members were assigned to Plaintiff by Defendants to assist him in the usual and ordinary course of his OLPC employment.

27. When the original term of the contract between Plaintiff and OLPC expired on December 31, 2008, Plaintiff was asked by OLPC to continue on.

28. After December 31, 2008, OLPC continued to compensate Plaintiff with the

monthly fee of $10,834.00 (USD), as well as to reimburse his expenses as per invoices submitted by Plaintiff.

29. OLPC did not notify Plaintiff in writing that he was terminated in 2009, 2010, or 2011.

30. OLPC did not notify Plaintiff in writing that his contract terms were modified in 2009, 2010, or 2011.

31. OLPC did not notify Plaintiff in writing that the extension to his contract was terminated in 2009, 2010, or 2011.

32. OLPC regularly communicated with Plaintiff about his PLPCA related activities in India in writing during 2009, 2010, or 2011.

33. Thus, even though the term of the written contract had expired, the relationship continued uninterrupted and as before.

34. Defendant never advised Plaintiff that he was terminated until July 2012. The notification was accomplished by an email that included a letter and a web posting on the OLPC website.

35. Plaintiff agreed to OLPC's offer and continued to render services, which OLPC continued to accept. Through the date of his termination by Rodrigo Arboleda the plaintiff was continually assured he would be paid his salary and expenses.

36. In reliance upon those commitments, Plaintiff Satish Jha continued to carry out tasks designed and intended to promote OPLC's activities and products in India.

37. By mutual agreement of the parties, Plaintiff's contract was extended until Rodrigo Arboleda terminated him on July 31, 2012. *See* Attachment A.

38. After December 31, 2008, OLPC continued to compensate Plaintiff the agreed-

upon monthly fee of $10,834.00 (USD), as well as to reimburse his expenses as per invoices submitted by Plaintiff.

39. Thus, even though the term of the written contract had expired, the relationship continued uninterrupted and as before.

40. Under OLPC's instructions and directives, Plaintiff visited practically every state in India.

41. With OLPC's knowledge and consent, during his employ Plaintiff introduced OPLC's activities and product in India. Plaintiff's related activities included, but were not limited to, meetings with chief ministers, education ministers, secretaries, other senior government officials and conveners of various state and national government sponsored educational programs.

42. Plaintiff's work also included, but was not limited to, projects such as Sarva Sikhsha Abhiyan.

43. Additionally, to create wide awareness of OLPC's operations, programs and benefits in India, Plaintiff arranged for coverage in the media, including appearing on various television channels.

44. Plaintiff also arranged for OLPC officials from the United States who were visiting India to meet officials holding key posts and positions in India.

45. Plaintiff also connected OLPC officials to both print and visual media.

46. OLPC's then-Chairperson Negroponte repeatedly and categorically assured Plaintiff that he would not have to spend anything out of his pocket and that his salary would be fully paid for at least another year.

47. Before stepping down, Negroponte advised Plaintiff that he would coordinate this

with OLPC including its new Chairman of OLPC.

48. Thereafter, OLPC reassured Plaintiff that he would be compensated at the same rate he had been receiving and that he would be reimbursed for his expenses as soon as OLPC's finances improved.

49. In reliance on Negroponte's representations and other binding representations made by OLPEC, Plaintiff continued to perform his duties.

50. After April 2009, OLPC stopped paying Plaintiff's fee and expenses. The invoices sent to OLPC by the Plaintiff for the months of May and June 2009 were unpaid.

51. Plaintiff was told that OLPC was undergoing financial problems and payments to him would resume in some time.

52. From April 2009 to July 2011, OLPC reassured Plaintiff that he would be compensated at the same rate he had been receiving. The assurances initially came from Negroponte and later from the CEO of OLPC, Defendant Arboleda.

53. From May 2009 to July 2011, OLPC reassured Plaintiff that that he would be reimbursed for his expenses as soon as OLPC's finances improved. The assurances initially came from Negroponte and later from Defendant Arboleda.

54. Defendant Arboleda reassured Plaintiff repeatedly that OLPC would pay him and made statements to encourage him to keep working such as the following: "I will take care of compensation for you," and "as things happen I will take care of everything."

55. Defendant Arboleda repeated his promise to make Plaintiff whole in one go when he came to India in 2011.

56. Of note, when Defendant Arboleda visited India in July 2011, he gave Plaintiff additional employees – Sanjeev Chaudhary, Ajay Nath.

57. Defendant Arboleda promised he would pay Plaintiff as soon as OLPC's finances improved, and Plaintiff agreed to this, even going so far as to approve the pay of Sanjeev Chaudhary and Ajay Nath before he was made whole.

58. Based on OLPC's reassurances and at its request, Plaintiff continued working for OLPC.

59. Plaintiff's perseverance and hard work translated into highly positive responses from the states of Kerala, Manipur, Uttar Pradesh, Himachal Pradesh, Rajasthan, Gujarat, Madhya Pradesh, Maharashtra, Karnataka, Bihar and West Bengal.

60. The work performed by Plaintiff yielded results with the governments of Kerala, Rajasthan and Manipur placing orders for OLPC laptops.

61. OLPC continued to receive reports from Plaintiff on a regular basis and exchanged many collaborative emails and made work requests to Plaintiff.

62. Upon the additional assurances of Chairman Negroponte, CEO Arboleda and OLPC, Plaintiff continued to provide dedicated service to OLPC.

63. Plaintiff was told that OLPC was undergoing financial problems and payments to him would resume in some time.  With OLPC's knowledge and consent Plaintiff used his own savings, pension funds and borrowings from friends and family to make the necessary expenses for travel to and stay in India, for travel within India, and for other expenses, such as phone bills.

64. Between May 2009 and July 2011, Plaintiff also carried the cost of employees. Plaintiff did all this with the expectation of being made whole. At all times relevant herein Defendant Arboleda made clear to Plaintiff that he would be made whole.

65. To reduce OLPC's expenses, Plaintiff even moved OLPC India's office from the Hotel Ambassador complex in Delhi to a location in Gurgaon, for which no rental had to be paid.

In calling in a personal favor from a friend, Plaintiff again established he was a dedicated employee willing to go the extra distance for the benefit of his employer.

66. Plaintiff also procured the assistance of volunteers who worked for OLPC India. The volunteers Plaintiff recruited worked for free and only received a reimbursement of expenses for their time and effort. The expense reimbursements were paid for by Plaintiff who relied on Arboleda's representations he would be reimbursed and made whole.

67. OLPC repeated assured Plaintiff that he too would be fully reimbursed and would be compensated his fee when OLPC regained financial stability.

68. Eventually OLPC started to meet the terms of its promised reimbursement of expenses and outstanding salary due. In July 2011, OLPC reimbursed Plaintiff's expenses and continued to do so until June 2012. They then suddenly stopped.

69. At that time or since, no payment was made towards the outstanding monies due Plaintiff for his services.

70. Plaintiff is due for services rendered from May 2009 to September 6, 2012.

71. In addition, other expense reimbursements remain unpaid.

72. All this while, and up to September 6, 2012, Plaintiff continued to work for OLPC, determined to make OLPC India a successful venture, believing the repeated reassurances from OLPC that all he was due would be paid and he would be made whole.

73. Plaintiff, having put his heart and soul in the project and even his personal funds and resources (with the understanding that same would be made good by OLPC), was extremely disappointed when eventually, Plaintiff's advice was ignored by OLPC, preventing OLPC India from reaching its potential.

74. For example:

9

    a. the Indian state of Kerala wanted to start with one laptop per 4 children but OLPC refused this request;

    b. Manipur ordered $21 million dollars in computers and OLPC wanted a 20 percent advance payment. The government does not advance monies without bank guarantees; and

    c. Rajasthan wanted to order $14 million of computers and the governor of the state put it in their budget. OLPC could not demonstrate that the state curriculum could be ported on the laptop.

75. Defendant advised Plaintiff that he was terminated on September 6, 2012. This was accomplished by an email that included a letter and a web posting on the OLPC website.

76. In an e-mail communication sent to Plaintiff on September 19, 2012, Defendant Arboleda wrote the following:

> I met with Nicholas here in Boston. He shared with me your correspondence with him. He asked me to manage this issue with the objective of finding a fair resolution to both parties to which I agreed, as has always been my attitude.
>
> Since this will involve executing of documents that will be mutually binding, I am cc not only Nicholas in this mail (not to be cc from now as per his own request) and Richard Bernstein, our BOD member and chief legal counsel.
>
> Please respond to this e mail so we can start the process ASAP.

77. Defendant Arboleda's e-mail was soon followed by an e-mail also dated September 19, 2012, from Mr. Richard Bernstein to Plaintiff that stated:

> In furtherance of Rodrigo and Nicholas's shared objective of reaching a fair and equitable resolution, I would appreciate the opportunity to speak with you and discuss ideas.
>
> Unfortunately, I am tied up the rest of today but can be available

10

>tomorrow morning any time from 8 am to 11:45 am. What time could work for you?
>
>In the interim, until an agreement is reached, it would be very helpful for all parties not to make any public comments, blog posts or statements. In these kinds of situations, such statements often make a resolution more difficult.
>
>I ask that you, and Rodrigo, manage this and maintain the professional privacy/confidentiality which will be constructive to reaching closure and an appropriate communication plan.
>
>Please advise on a time tomorrow we can speak.

78. Unfortunately, in spite of the assurance via the e-mails of September 19, 2012, and Plaintiff's repeated efforts to meet with Defendant Arboleda and Mr. Bernstein, no positive action was taken by OLPC to resolve the issue.

79. E-mails sent by Plaintiff to OLPC with detailed accounts remained unanswered.

80. OLPC currently owes Plaintiff an amount that exceeds $733,000.00.

## V.
## COUNT ONE: Breach of Contract

81. Plaintiff and Defendants entered into a written contract dated July 29, 2008, whereby Plaintiff agreed to furnish various services to Defendants and Defendants agreed to pay for said services. Plaintiff has fully performed the contract and Plaintiff has fully provided services to Defendants pursuant to said contract. Defendants accepted such services and became bound to pay Plaintiff the total amounts it promised. Plaintiff has performed all precedents to filing suit, as a result of the breach by Defendants. Plaintiff has suffered damages as described above.

82. Although the original written contract between OLPC and Plaintiff expired on December 31, 2008, OLPC extended the contract with Plaintiff by continuing to request the same volume and type of work and by continuing to pay, for a time, the same wages as specified under

the written agreement.

83. Eventually, however, OLPC stopped paying Plaintiff but encouraged him to work with promises that his wages of $10,834.00 per month would be paid.  OLPC's failure to pay Plaintiff his promised wages from May 2009 onward is therefore a breach of OLPC's contract with Plaintiff.

## VI.
## COUNT TWO: Quantum Meruit

84. Alternatively, Plaintiff seeks recovery from Defendants in the amount of at least $733,420.00 on the theory of quantum meruit.  Plaintiff furnished valuable services and goods to Defendants, which benefited Defendants.  Plaintiff expected to be compensated.  A reasonable value for the Plaintiff's services is at least $733,420.00 plus additional costs and expenses.

## VII.
## COUNT THREE: Fraud and Fraudulent Inducement

85. By promising repeatedly to satisfy the payment of Plaintiff's outstanding salary, Defendants induced Plaintiff to continue working without payment.

86. However, Defendants promised future payment to Plaintiff without the intention of ever making the payment.

87. Defendants promised future payment to Plaintiff with the knowledge that these promises would induce Plaintiff to continue working for Defendants.

88. Plaintiff reasonably relied upon Defendants' promises to pay his belated salary in continuing to work for Defendants.

89. Plaintiff's reliance upon Defendants' promises to make payment caused Plaintiff to incur damages in the amount of the promised salary.

## JURY DEMAND

90. Plaintiff hereby demands a jury trial.

## PRAYER FOR RELIEF

Wherefore, premises considered, Plaintiff respectfully requests that Defendants be cited to appear and answer, and on final trial Plaintiff have the following relief:

a. Judgment against Defendants for damages in an amount within the jurisdictional limits of the Court;

b. Pre-judgment and post-judgment interest, as provided by law;

c. Attorney's fees;

d. Costs of suit; and

e. Any other such relief to which Plaintiff may be justly entitled.

>
> Respectfully submitted,
>
> PLAINTIFF, SATISH JHA
> By his Attorney,
>
> */s/ Robert J. Bonsignore*
> Robert J. Bonsignore, BBO #547880
> Bonsignore, LLC
> 193 Plummer Hill Road
> Belmont, NH  03220
> Telephone: (781) 350-0000
> Cell: (781) 856-7650
> e-mail:  rbonsignore@classactions.us

Dated:  December 14, 2014